UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KENIJAH CAMPBELL,

     Petitioner,

v.                             Case No.  4:17cv149-WS-CJK

JULIE L. JONES,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254, with supporting memorandum.  (Doc. 1).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 22).  Petitioner replied. (Doc. 24).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to habeas relief.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Petitioner had a sexual relationship with a girl, T.F., he met at church. Petitioner was between the ages of 19 and 21.  T.F. was between the ages of 12 and

14. After T.F. disclosed the sexual relationship to her grandmother, child protection got involved and law enforcement investigated. Petitioner fully admitted the conduct to law enforcement in a recorded interview. As petitioner put it, he "told them everything [and] didn't lie or hold anything back." Petitioner admitted to having sexual intercourse with T.F. at least 25-30 times. (*See* Doc. 22, Ex. D, pp. 5-6, 15-18, 42-43).[1]

Petitioner was charged in Leon County Circuit Court Case No. 2014-CF-572, with three counts of lewd or lascivious battery against a child 12-16 years of age (Counts 1-3), and one count of lewd or lascivious molestation against the same child (Count 4). (Doc. 22, Ex. C (plea and acknowledgement of rights); Ex. B1, pp. 29-37 (plea hearing transcript)). On March 12, 2015, petitioner entered a counseled, straight-up plea of no contest to all four crimes as charged, with sentence to be determined by the court. (*Id*.). The trial court conducted a plea colloquy, determined petitioner's plea was supported by a factual basis and was knowing and voluntary, accepted the plea and set the matter for sentencing. (Ex. B1, pp. 29-37)). After considering mitigation testimony from four defense witnesses and petitioner

---

[1] References to exhibits are those provided at Doc. 22. Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

himself, the trial court adjudicated petitioner guilty and sentenced him to concurrent terms of 15 years in prison on Counts 1 and 2 followed by concurrent terms of 15 years on sex offender probation on Counts 3 and 4.  (Ex. D (sentencing hearing transcript); Ex. E2 (judgment)).  Judgment was rendered May 28, 2015.  (Ex. E1).[2] Petitioner did not directly appeal from the judgment.

On August 21, 2015, petitioner filed a *pro se* motion to reduce or modify sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. G1).  The state circuit court denied relief on September 9, 2015.  (*See* Ex. A).

On November 25, 2015, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. B1, pp. 3-16).  The state circuit court denied the motion without conducting an evidentiary hearing.  (*Id*., pp. 17-37).  The Florida First District Court of Appeal (First DCA) affirmed per curiam without opinion.  *Campbell v. State*, 222 So. 3d 1204 (Fla. 1st DCA 2017) (Table) (copy at Ex. B2).  The mandate issued March 13, 2017.  (Ex. B5).

Petitioner filed his federal habeas petition on March 23, 2017.  (Doc. 1). Petitioner claims his no contest plea was involuntary because it was based on trial counsel's mis-advice that he would serve only 5 years in prison.  (*Id*., p. 4).

---

[2] On July 17, 2015, a corrected judgment was entered to reflect the trial court's oral adjudication of guilt during the sentencing hearing.  (Ex. E2).

Respondent asserts petitioner procedurally defaulted this claim because "he didn't mention the Constitution of the United States or any federal statutes or cases or argue any federal constitutional grounds in support of his Motion for Postconviction relief. Nor did he do so in his appeal of the postconviction order."  (Doc. 22, pp. 6-7) (citations to record omitted).  Respondent alternatively argues that even if petitioner is deemed to have properly exhausted the federal basis of his ineffective assistance claim, he is not entitled to relief because the state court's rejection of his claim was consistent with clearly established federal law.  (*Id.*, pp. 16-21).  This court need not decide the procedural default issue, because even assuming to petitioner's benefit that he fairly presented the federal constitutional nature of his ineffective assistance claim to the state courts and the state courts rejected the claim on the merits, petitioner fails to meet § 2254(d)'s demanding standard.

SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are

presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]    Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this

Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## PETITIONER'S CLAIM

Petitioner's ineffective assistance claim is based on these factual allegations:

> The Petitioner raised the claim of ineffective assistance of counsel, who mislead [sic] the Petitioner that he would only serve five years in prison, only to learn once the Petitioner reached the Department of Correction that he would have to serve more th[a]n five years. This was a violation of Due Process, to be induced to enter his guilty plea, believing he would serve no longer th[a]n five years, and because of this advi[c]e, the Petitioner gave of [sic] his right to trial, based on misinformed information.

(Doc. 1, p. 4). As mentioned above, the court will assume to petitioner's benefit (without deciding) that he properly presented this constitutional claim to the state courts in his Rule 3.850 proceeding. (Ex. B1, pp. 3-16).

The state circuit court summarily denied relief for these reasons:

> Defendant entered an open no contest plea to three counts of lewd or lascivious battery and one count of lewd or lascivious molestation. The Court sentenced Defendant to concurrent terms of 15 years incarceration for counts 1 and 2, followed by concurrent terms of 15 years sex offender probation for counts 3 and 4. *Exh. 1-Judgment and Sentence*. Defendant did not appeal.

> Defendant now alleges that counsel was ineffective for misadvising him as to the length of sentence the Court would impose. This claim is refuted by the record, and Defendant cannot show prejudice. *See Spera v. State*, 971 So. 2d 754, 757 (Fla. 2007) (outlining standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984)).

The plea colloquy shows that Defendant understood the sentence would be left up to the court, with a maximum exposure of 60 years incarceration, and nonetheless opted to enter the plea. *Exh. 2-Plea Hearing*. Defendant cannot now go behind statements made under oath at the plea hearing. *Davis v. State*, 938 So. 2d 555, 557 (Fla. 1st DCA 2006).

Accordingly, Defendant's motion is DENIED. Defendant has 30 days to file a notice of appeal.

(Ex. B1, pp. 17-18). The court attached copies of the judgment and plea transcript. The First DCA affirmed without explanation. (Ex. B2).

Petitioner argues that the state court misconstrued his allegations. He explains:

The defendant presented a clear claim, that his trial counsel misadvised him as to the leng[th] of time that he would have to actually serve[ ] in prison. The defendant did not raise[ ] the claim that he was not advised about how much time he faced.

(Doc. 1, Mem., p. 2). The undersigned disagrees with petitioner's contention, and finds that the circuit court squarely addressed petitioner's allegations. The First DCA's summary affirmance of that decision is an "adjudication on the merits" of petitioner's claim entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

i.    Guilty Plea Challenges

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 36-37 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Once a plea of guilty [or no contest] has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

This waiver includes claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970) (holding that the assistance of counsel received by a defendant is relevant to the question of whether the defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and

understanding).  The Supreme Court elaborated in *Tollett v. Henderson*, 411 U.S. 258 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.* at 267.

The advantages of entering a plea may only be secured "if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony.  *Id.*

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

> ii.    Ineffective Assistance of Counsel Claims

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel). The petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.   The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant."   *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

 *Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result.   *See Strickland*, 466 U.S. at 694.   A reasonable probability is one that sufficiently undermines confidence in the outcome.   *Id.*   "The likelihood of a different result must be substantial, not just conceivable."   *Richter*, 562 U.S. at 112.

 When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.   *See Strickland*, 466 U.S. at 698.   "Surmounting *Strickland*'s high bar is never an easy task."   *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).   "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.  As the Court in

*Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both
> "highly deferential," and when the two apply in tandem, review is
> "doubly" so.  The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial.  Federal habeas courts must
> guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.  The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal

claim followed by a later unexplained order upholding that judgment, federal habeas

courts employ the following "look through" presumption: "[T]he federal court

should 'look through' the unexplained decision to the last related state-court decision

that does provide a relevant rationale.  It should then presume that the unexplained

decision adopted the same reasoning."  *Wilson v. Sellers*, — U.S. —, 138 S. Ct.

1188, 1192 (2018).

The state court reasonably determined the facts and reasonably applied the

*Strickland* standard to conclude that petitioner failed to show his plea was invalid

due to constitutionally ineffective advice of counsel.  The plea and sentencing

transcripts conclusively refute petitioner's allegation that his decision to plead no

contest was induced by counsel's advice that he would serve only 5 years in prison.

At petitioner's plea hearing, trial counsel Zachary Ward described the terms of

petitioner's plea:

> MR. WARD: Before you is Kenijah Campbell, K-E-N-I-J-A-H, Case
> 2014-CF-572. He is before the Court. He is going to change his
> previously entered plea of not guilty to the four-count information to a
> plea of no contest.
>
> Counts 1, 2, and 3 are lewd and lascivious battery on a victim
> over 12 years of age, by someone over 18. And Count 4, is lewd and
> lascivious molestation with the same age range.
>
> We do not have an agreement with the State; this is a straight up
> plea. He has credit for two days. It is a no contest plea and **there is no
> agreed upon sentence**.

(Ex. B1, p. 30) (emphasis added). After petitioner was sworn, the court addressed

him personally:

> THE COURT: All right. You, in 14-CF-572 have four counts, three
> counts of lewd and lascivious battery and one count lewd and lascivious
> molestation. Those are all second degree felonies carrying 15 years
> each in the Department of Corrections.
>
> You have an absolute right to a trial by jury where the State
> would be required to bring witnesses in and prove beyond the exclusion
> of every reasonable doubt that you are guilty of those charges and Mr.
> Ward would be able to put on such a defense as deemed appropriate.
> Do you understand that?
>
> THE DEFENDANT: Yes, sir.

THE COURT:  And you're telling me today I want to waive my right to a trial; I want to enter into a plea in this case of no contest that says I'm not contesting the charges.  And from that point forward we go to a sentencing.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  **And you understand that this is what we call an open plea, which means** you're entering the plea, so no longer a requirement for a trial.  And **you're leaving the sentencing up to me and I have to decide what's an appropriate sentence.**  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  **And right now, the way the guidelines are spelled out, absent me getting some reason to go below the guidelines, the minimum sentence I can give you is 291 months to a maximum of 60 years.**  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  **Has anybody promised you anything, told you what was likely to happen if you entered an open plea and as far as disposition is concerned[;] or do you understand at this point it's the buck stops here, as far as your sentence is concerned?**

THE DEFENDANT:  Yes, sir.

THE COURT:  Anybody threaten, force, or coerce you to enter into this plea?

THE DEFENDANT:  No, sir.

        . . . .

THE COURT:  Do you have any questions about this plea, about this case or these charges?

THE DEFENDANT:  No.

THE COURT:  **And you understand that what we're going to do at this point is we're going to defer sentencing.  We're going to order a presentence investigative report to be done by parole and probation.  And they'll talk to lots of people, they'll do a background check on you, they're going to talk to you and take a statement from you, take a statement from your lawyer, a statement from Ms. Frazier [the prosecutor] – which may very well be reserved for your sentencing hearing.  Then that's going to come in to me and I'll use that along with this, along with whatever testimony is presented to decide what's a fair sentence.**

Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  Any question, at all?

THE DEFENDANT:  No, sir.

(Ex. B1, pp. 32-35) (emphasis added).  Defense counsel added: "And I think as his attorney I should put on the record as far as a factual basis, an allegation was made you know.  A full confession was entered by all appearances legally, so this is in all likelihood the proper way to resolve it, as opposed to putting the Court through something that's likely going to end in a sentencing hearing anyway, Your Honor." (*Id*., p. 36).  After discussing a sentencing scoresheet and the fact that petitioner's score was high because of the nature and number of offenses, defense counsel

explained:  "I will tell the Court, like I told Mr. Campbell and his family, there is –
there are several statutory mitigators that jump right out of the floor in this one and
that's what we're going to try to present during the sentencing hearing."  (*Id.*, pp.
31-32).

Petitioner's presentence investigation report concluded with a
recommendation of probation or community control.  (Ex. D, p. 27).  At sentencing,
the defense emphasized this was petitioner's first offense, and presented four
character witnesses along with petitioner's own testimony on five statutory
mitigators:  (1) petitioner pled no contest to the charges and was remorseful; (2)
petitioner did not appreciate the nature of his conduct because he was unaware of
the legal age of consent and the victim's actual age; (3) the victim was a willing
participant, and petitioner did not verbally or physically threaten her; (4) petitioner
not only cooperated with the State to resolve the charges but confessed to even more
sexual encounters than law enforcement was initially aware; and (5) the offense was
committed in an unsophisticated manner.  (Ex. D, pp. 23-29); *see also* Fla. Stat. §
921.0026 (list of statutory mitigators).  The defense also submitted an expert opinion
that petitioner's risk of reoffending was low to nonexistent.  (*Id.*, p. 29).  Defense
counsel argued that the appropriate sentence was probation or community control.
(*Id.*, p. 28).

The State presented statements from T.F. and her grandmother that portrayed the sexual relationship as mentally abusive and threatening, and petitioner as conniving and manipulative. (*Id*., pp. 29-41). The State argued that the appropriate sentence was a total of 30 years in prison or, if the court was inclined to depart downward, 7 years in prison followed by probation. (*Id*., pp. 30-43). The court departed downward to a total sentence of 15 years in prison followed by probation.

It is incredible for petitioner to say he did not know, until he stepped into the Department of Corrections, that he would serve more than 5 years in prison. The record establishes that petitioner was not misled about the sentencing consequences of entering an open plea to the court. The record also establishes that petitioner's plea was not motivated by a promise he would serve only 5 years in prison, but by the overwhelming evidence of his guilt, including his own legal, voluntary confession; the State's unwillingness to negotiate a plea deal; and defense counsel's reasonable advice that petitioner's best strategy was to take responsibility, express remorse and present a strong case for mitigated punishment.

Fairminded jurists can concur in the state court's determination that petitioner failed to satisfy *Strickland*'s requirements. Petitioner is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Kenijah Campbell*, Leon County Circuit Court Case No. 2014-CF-572, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 4th day of December, 2018.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.